**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| EVA TRIPPLETT, | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
|     v. | ) | No. 05 C 55 |
| | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | |
| **HUMAN SERVICES,** | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Plaintiff Eva Tripplett, who is represented by appointed counsel, contends that defendant Illinois Department of Human Services ("DHS") retaliated against her after she filed two EEOC charges of discrimination by refusing to certify her as a Public Aid Eligibility Assistant. On the other hand, DHS asserts that it had legitimate, non-pretextual reasons for its actions. A motion for summary judgment filed by DHS is before the court.

As discussed below, when the record is viewed in the light most favorable to her, Ms. Tripplett has created a mosaic of circumstantial evidence that could allow a jury to infer that DHS discriminated against her. Nevertheless, the Seventh Circuit directs that if a defendant presents unrebutted evidence that it would have taken the adverse employment action at issue against the plaintiff even if it had no retaliatory motive, the defendant is entitled to summary judgment because the plaintiff has failed to show that she was harmed by the alleged retaliation. Here, it is undisputed that DHS would have declined to certify Ms. Tripplett regardless of the alleged discrimination. Accordingly, DHS's motion for summary judgment is granted.

# I. Background

## A. Relevant People

Plaintiff Eva Tripplett currently works for DHS. This case turns on events relating to her unsuccessful effort to be promoted to the position of Public Aid Eligibility Assistant ("PAEA"). PAEAs are responsible for determining the eligibility and category of DHS customers requesting cash, medical and/or food stamps.

Kate Baker was a Transaction Supervisor at DHS and was responsible for handling promotions, posting jobs, and related tasks. Brenda Montgomery was the Personnel Manager for DHS's Division of Human Capital Development. Ms. Montgomery was Ms. Baker's supervisor although Ms. Baker was the final decision-maker responsible for selecting who received promotions within DHS. Carmen Cole supervised the PAEAs at DHS's Roseland office location and was Ms. Tripplett's direct supervisor while she was a probationary PAEA. Ms. Cole's responsibilities included assigning and issuing work, reviewing work to ensure it was correct, scheduling interviews and appointments, and ensuring work was properly completed by the PAEAs.

Ms. Cole's immediate supervisor was Rosemary Allen until December 31, 2004, when Ms. Allen retired. After Ms. Allen retired, Ms. Cole became the interim administrator of the intake department. Ms. Allen reported to Georgia Hughes, who was the acting Local Office Administrator for DHS at its Roseland office. As Local Office Administrator Ms. Hughes oversaw the administration and function of the entire office.

Nathan Mason was the Regional Training Coordinator for DHS. As Regional Training Coordinator Mr. Mason coordinated and trained DHS employees, scheduled people for training, and handled training requests between the staff, department staff and various training

-2-

departments at the DHS. In this capacity, Mr. Mason trained Ms. Tripplett during her time as a probationary PAEA.

Michael Sherman was a DHS Office Clerk as well as a union steward at the Roseland location. As a union steward, Mr. Sherman was tasked with attempting to keep management in compliance with the applicable collective bargaining agreement.

## B. Ms. Tripplett's First EEOC Charge

DHS hired Ms. Tripplett on July 1, 1999, and initially assigned her to work in DHS's Northern office as an office clerk. In August of 2001, Ms. Tripplett's psychologist diagnosed her as having clinical depression resulting from work-related stress and recommended that she be transferred to a different work location. DHS followed this recommendation and in October of 2001, transferred Ms. Tripplett from the Northern office to its Roseland office.

It is undisputed that after her transfer to the Roseland office, Ms. Tripplett was subjected to derogatory remarks by a co-worker and an administrator who suggested to her that they thought she had mental problems. Thus, on or around July 9, 2003, Ms. Tripplett and Michael Sherman (a union steward) reviewed Ms. Tripplett's personnel file maintained by DHS at the Roseland office and discovered that medical documents detailing the reason for the transfer were there.

On July 9, 2003, Ms. Tripplett filed an EEOC charge of discrimination based on the ADA and Title VII. Specifically, Ms. Tripplett asserted that DHS had discriminated against her by subjecting her to derogatory treatment flowing from the fact that it had retained information from Ms. Tripplett's psychologist in her local office personnel file in violation of the ADA. She also alleged that her immediate supervisor sexually harassed her.

-3-

## C. Tripplett's Promotion and Training

On November 1, 2004, DHS promoted Ms. Tripplett to the position of Public Aid Eligibility Assistant ("PAEA"). This position required Ms. Tripplett to satisfactorily complete a four-month probationary period ending on March 1, 2005. The PAEA position required Ms. Tripplett to perform receptionist-like duties and use an automated intake system to register applicants who sought benefits either in person or by mailing in applications.

Nathan Mason, DHS's Regional Training Coordinator, trained Ms. Tripplett in her new role as a probationary PAEA. Prior to training Tripplett, Mr. Mason had never before trained a probationary PAEA and had not trained any PAEAs for the previous "couple of years." However, Mr. Mason had trained PAEAs on a state-wide basis using a formal program five years before he was assigned to train Ms. Tripplett.

Mr. Mason provided one-on-one training for two days in November of 2004. During this time, he reviewed and discussed handouts which described the assistance programs DHS offered and engaged in role-playing so Ms. Tripplett could practice screening applicants and entering customer information into the automated intake system ("AIS"). In addition, Mr. Mason worked with Ms. Tripplett as she entered information from two mail-in applications into AIS.

After this initial training, Rosemary Allen (the Intake Administrator at the Roseland office) became concerned about Ms. Tripplett's ability to work with AIS. She thus asked Mr. Mason for more training, and in December of 2004, Ms. Tripplett received two additional days of training. Mr. Mason also provided training whenever he was at the Roseland location and Ms. Tripplett requested it.

Ms. Tripplett also received daily training and support from Rosemary Allen and Carmen Cole (the supervisor of the PAEAs at the Roseland office). During Ms. Tripplett's time as a

-4-

probatory PAEA, she was supervised by Rosemary Allen, and then Carmen Cole, who was promoted in December of 2004 when Ms. Allen retired. In the latter part of 2003 or early 2004, Georgia Hughes became the Acting Local Office Administrator of the Roseland office, replacing Pam Kirian. As Acting Local Office Administrator, Hughes was in charge of the entire office.

### D. Tripplett's Interactions with Other PAEAs

During her probationary period, Tripplett was instructed to observe other PAEAs at their jobs. She was also told to consult with Mr. Mason, Ms. Cole, or Ms. Allen if she had any questions, as opposed to directly asking her fellow PAEAs. As part of her required observation, on November 3, 2004, Ms. Tripplett was instructed to observe PAEA Larry Ollins. Ms. Tripplett asked Mr. Ollins a question, and he told her to ask Ms. Cole. In response, Mr. Ollins contends that Ms. Tripplett stated, "I don't want to get no bad habits from your ass anyway." Ms. Tripplett denies making this statement.

On November 18, 2004, Tripplett worked with Brian Allen, another PAEA. Ms. Tripplett asked him questions, and like Mr. Ollins, he reminded her she was supposed to ask management staff for assistance. The parties again dispute what happened next: DHS contends that Ms. Tripplett became hostile, combative and threatening, while Ms. Tripplett denies that she acted inappropriately.

Later that same day, Ms. Tripplett went to see Rosemary Allen to discuss the situation with Mr. Allen before it got "blown out of proportion." Ms. Tripplett claimed that Mr. Allen had insulted her and Ms. Allen reminded Ms. Tripplett to ask management – not PAEAs – for help. Ms. Tripplett contended that she asked Mr. Allen for help because her managers were not available, and Ms. Allen observed that both she and Ms. Cole had helped Ms. Tripplett several times that day.

-5-

At this point, the parties' account of the conversation diverges. Ms. Allen testified at her deposition that Ms. Tripplett became loud and confrontational, accused Ms. Allen of preventing her from keeping her job, and walked around Ms. Allen's desk and stood close to her chair. Ms. Allen then told Ms. Tripplett that she would continue the conversation only with a union representative present. As Ms. Allen called for the union representative on the intercom, she alleges that Ms. Tripplett became verbally abusive, used profanity, stated she would go over Ms. Allen's head, and then stormed out of the office.

Ms. Tripplett, on the other hand, again denies that she acted inappropriately and contends that Ms. Allen refused to listen to her side of the story. Ms. Tripplett concedes that she may have raised her voice, but did so only to defend herself and never walked around Ms. Allen's desk.

**E.     Tripplett's Second EEOC Charge**

On December 7, 2004, Ms. Tripplett filed a second EEOC charge against DHS, asserting that DHS had retaliated against her during her PAEA probationary period after she filed her first EEOC charge in July of 2003. As of August of 2004, Ms. Baker did not know about the first EEOC charge. During Ms. Tripplett's probationary period, Ms. Cole and Ms. Allen did not know about either EEOC charge or the fact that DHS had stored medical records in Ms. Tripplett's personnel file.

In the latter part of 2003 or 2004, Georgia Hughes became the Acting Local Office Administrator of the Roseland office, replacing Pam Kirian. The parties dispute when Ms. Hughes knew about the first EEOC charge but agree that she did not know about the medical record dispute during Ms. Tripplett's probationary period. Specifically, Ms. Kirian told Ms. Hughes that Ms. Tripplett had filed the first EEOC charge, but Ms. Hughes could not recall

when she learned this information or any specifics. Ms. Hughes, however, was notified when Ms. Tripplett filed her second EEOC complaint.

### F.    Tripplett's December Meeting with Rosemary Allen

On December 10, 2004, Ms. Allen and Ms. Cole met with Ms. Tripplett to discuss her work performance and allegedly inappropriate use of her break and lunch time. Ms. Allen and Ms. Cole characterize Ms. Tripplett as agitated and combative during this meeting and assert that Ms. Tripplett shouted at them several times. Ms. Tripplett, however, denies that she acted inappropriately.

### G.    Tripplett's Suspension

On January 7, 2005, Ms. Hughes recommended that DHS suspend Ms. Tripplett for ten days based on the November 3 and 18 incidents involving Ms. Tripplett's interactions with PAEAs Larry Ollins and Brian Allen and the subsequent meeting with Rosemary Allen. Ms. Tripplett asserts that Ms. Hughes failed to investigate these incidents adequately because she did not interview the customers present during these altercations. According to Ms. Tripplett, this investigation would have corroborated her version of events.

Ms. Tripplett also contends that Ms. Hughes discriminated against her by recommending a harsher punishment than that meted out to Brian Allen, who also was discourteous to customers. In reaching her recommendation regarding Ms. Tripplett, Ms. Hughes referred to prior incidents of alleged discourteous behavior pre-dating November 1, 2004. However, the only discipline Ms. Tripplett had ever previously received for this kind of alleged conduct was a written reprimand issued on March 9, 2004, before her PAEA probationary period. Ms. Tripplett had received a prior ten-day suspension prior to her PAEA probationary period, but it was for excessive tardiness.

-7-

In contrast, Brian Allen's job history included a reprimand for failure to follow instructions and two suspensions for failure to follow instructions and neglect of duties. On August 23, 2004, he then received another written reprimand for discourteous and unprofessional behavior. Ms. Tripplett characterizes this as unfairly lenient when compared to the discipline imposed on her given that this was his second such offense within a twelve-month period. Subsequently, on May 24, 2005, Ms. Hughes recommended that Mr. Allen receive a five-day suspension for taking too long to process customers and making an error in correcting a customer's entitlement to benefits. Ms. Tripplett again characterizes this as discriminatory, contending that it is disproportionate to the discipline imposed on her in light of Mr. Allen's total disciplinary record.

Pam Kirian, after assessing Ms. Hughes's recommendations, ultimately suspended Ms. Tripplett for five days based on the allegedly unprofessional, inappropriate behavior involving Mr. Ollins, Mr. Allen and Ms. Allen.

### H. The Decision not to Certify Ms. Tripplett as a PAEA

#### 1. Ms. Cole's Evaluation of Ms. Tripplett

On February 2, 2005, Ms. Cole evaluated Ms. Tripplett's performance from November 1, 2004 through January 27, 2005. At this time, Ms. Cole was new to the Intake Administrator position and had not evaluated a PAEA before. Ms. Cole thus corresponded with Ms. Hughes regarding what factors should be considered and what needed to be included in the evaluation. When she evaluated Ms. Tripplett's performance, Ms. Cole checked "Not Met" for each point in the objectives category based on her finding that Ms. Tripplett was unable to complete tasks without assistance, was not receptive to management staff's instructions, was discourteous in

front of customers, and used work time inappropriately. Ms. Cole then placed Ms. Tripplett in the "needs improvement" category when evaluating her overall performance.

Ms. Cole's memorandum also noted that Ms. Tripplett took excessive use of time off during her probationary period. Specifically, Ms. Tripplett took five vacation, sick or personal days off in November of 2004, six days in December of 2004, and seven days in January of 2005. Ms. Tripplett was also unavailable for five additional days due to her suspension. In addition, Ms. Cole referenced the ten-day suspension based on excessive tardiness that predated the PAEA probationary period. Ms. Cole testified that Ms. Tripplett's unavailability during her probationary period contributed to her decision to disqualify Ms. Tripplett as a PAEA. According to Ms. Cole, employees are entitled to use available benefit time, but their use of it during a probationary period prevents them from participating in additional training necessary to learn how to perform a new job.

According to Ms. Tripplett, the reference to the ten-day suspension was inappropriate under the collective bargaining agreement, which provides that evaluations should be limited to the employee performance during the probationary period. Ms. Tripplett contends that her ten-day suspension was improperly taken into account, while both Ms. Hughes and Ms. Cole testified at their depositions that they did not consider the ten-day suspension when deciding whether Ms. Tripplett had satisfactorily completed her probationary period.

Ms. Cole testified that her recommendation was based on Ms. Tripplett's "demonstrated confrontational and unprofessional behavior toward management and co-workers, and in the presence of customers" throughout her probationary period. This characterization of Ms. Tripplett's demeanor was based on the incidents with Mr. Ollins on November 3, 2004, and with

Brian Allen and Rosemary Allen on November 18, 2005, that led to Ms. Tripplett's five-day suspension.

Ms. Cole's memorandum also cited Ms. Tripplett's inability to use the computer system and her slowness in processing customer interviews as reasons for disqualifying her as a PAEA. Finally, Ms. Cole noted that despite the one-on-one training and additional follow-up training Ms. Tripplett received, Ms. Tripplett still experienced difficulty understanding and completing her duties as a PAEA.

### 2. Ms. Hughes' Decision

On or about February 25, 2005, Georgia Hughes recommended that Ms. Tripplett not be certified in the PAEA position based on Ms. Tripplett's inability to successfully perform the tasks of the PAEA position and her assessment that Ms. Tripplett acted inappropriately and discourteously during her probationary period. In reaching this decision, Ms. Hughes relied on the documents and memoranda she received from Ms. Tripplett's supervisors (Ms. Allen, before she retired, Ms. Cole, and Mr. Mason). These reports indicated, among other things, that Ms. Tripplett had difficulty performing automated intake system interviews and following directions, and had a volatile personality. After Ms. Tripplett was not certified in the PAEA position, DHS placed her back into her previous position as an office clerk.

## II. Discussion

Ms. Tripplett asserts that DHS retaliated against her after she filed two charges of discrimination with the EEOC by: (1) failing to properly train her while she was a probationary PAEA; (2) wrongfully suspending her for five days while she was a probationary PAEA; and (3)

-10-

refusing to certify her as a PAEA.[1]  The parties disagree as to whether Ms. Tripplett may proceed under the direct method of proof, as opposed to the well known *McDonnell Douglas* standard, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), if she seeks to establish discrimination by pointing to a mosaic of facts that support her claim.  According to DHS, the direct method only comes into play when a defendant directly admits that it engaged in prohibited conduct.

For the following reasons, the court disagrees with DHS's characterization of the evidence required to proceed under the direct method.  It nevertheless finds that DHS is not responsible for Ms. Tripplett's inability to use DHS's automated intake system and that DHS would have declined to certify Ms. Tripplett regardless of any alleged discrimination based on her failure to learn how to use the automated intake system.  Accordingly, DHS is entitled to summary judgment.

### A.    Standard for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir.

---

[1] Ms. Tripplett's complaint also alleges that DHS retaliated against her by promoting Latoya Bonds to the PAEA position at the Roseland office even though she was less qualified as Ms. Tripplett.  In her response to DHS's motion for summary judgment, however, Ms. Tripplett withdrew this claim.  *See* Tripplett Response to Def. SOF ¶ 13; Plaintiff's Response to DHS's Motion at 3 n.2.  Thus, the court will not consider this argument, although it briefly notes that Ms. Tripplett's concession is wise, as DHS appears to have promoted Ms. Bonds due to an error and rectified its mistake as soon as it was brought to its attention.

1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Moreover, a court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a "genuine" material fact exists; that is, the evidence is such that a reasonable jury could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 322.

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears, Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

**B.    Retaliation Standard**

Ms. Tripplett contends that she may use direct evidence, circumstantial evidence, or the *McDonnell Douglas* burden shifting method to create a triable issue of fact as to whether DHS retaliated against her based on protected conduct. DHS disagrees, arguing that there are only two ways to prove discrimination: the direct method and the indirect method.

The parties' disagreement appears to be a matter of semantics, as there are two ways to prove discrimination via the direct method. Coupled with the *McDonnell Douglas* indirect

method, this adds up to three distinct ways in which the plaintiff may proceed (if each way is counted). Thus, the Seventh Circuit recently clarified that:

> In a Title VII or age discrimination case, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof, nomenclature which we have explained is somewhat misleading. The nomenclature is misleading because the phrase "direct method" tends to imply that an employee only may proceed under the direct method with direct evidence. We recently have explained, however, that this is not the case. Direct proof of discrimination is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion (*e.g.*, "You're too old to work here."), but also includes circumstantial evidence which suggests discrimination through a longer chain of inferences. The focus of the direct method of proof thus is not whether the evidence offered is "direct" or "circumstantial" but rather whether the evidence "points directly" to a discriminatory reason for the employer's action.

*Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal citations and quotations omitted);

*see also Brewer v. Board of Trustees of University of Illinois*, 479 F.3d 908, 915 n.5 (7th Cir.

2007) ("[w]hile the terms 'direct' and 'indirect' are often used without trouble, they sometimes

cause confusion when litigants believe that the 'direct' method of proof permits consideration

only of direct evidence – that is, testimony concerning an employer's open admission of

discriminatory intent – and not circumstantial evidence").

Here, Ms. Tripplett relies on the direct method and contends that circumstantial evidence

in this case suggests discrimination through a longer chain of inferences.[2] This is an acceptable

method of responding to DHS's motion for summary judgment. Under the direct method, a

plaintiff can prove retaliation by presenting "direct or circumstantial evidence that (1) she

engaged in statutorily protected activity; (2) she suffered an adverse action taken by the

---

[2] Ms. Tripplett does not seek to establish her case through the *McDonnell Douglas* indirect evidence method of proving discrimination. *See* Tripplett's Response to DHS's Motion at p. 11, n.4. Since she has explicitly eschewed this approach, the court will confine its discussion to whether she survives summary judgment using the direct method.

-13-

employer; and (3) there was a causal connection between the two." *Metzger v. Illinois State*

*Police*, 519 F.3d 677, 681 (7th Cir. 2008).

Simply pointing to circumstantial evidence, however, does not mean that Ms. Tripplett is

necessarily entitled to a trial. Instead, as the Seventh Circuit recently clarified:

> A plaintiff can prevail under the direct method by showing an admission of
> discrimination or by constructing a convincing mosaic of circumstantial evidence
> that allows a jury to infer intentional discrimination by the decisionmaker. If the
> plaintiff's evidence is thereafter contradicted, the case must be tried unless the
> defendant presents unrebutted evidence that he would have taken the adverse
> employment action against the plaintiff even if he had had no retaliatory motive;
> in that event the defendant is entitled to summary judgment because he has shown
> that the plaintiff wasn't harmed by retaliation.

*Ridings v. Riverside Medical Center*, — F.3d —, No. 06-4328, 2008 WL 3271916, at *13 (7th

Cir. Aug. 11, 2008) (internal citations and quotations omitted); *Burnett v. LFW Inc.*, 472 F.3d

471, 481 (7th Cir. 2006).

## C.    Ms. Tripplett's Claims

The parties agree that Ms. Tripplett engaged in protected activity and that the failure to

certify her as a PAEA is an adverse employment action. The court will thus focus on: (1)

whether circumstantial evidence suggests that there was a causal connection between Ms.

Tripplett's EEOC complaints and DHS's decision not to certify her as a PAEA; and (2) if so,

whether DHS has pointed to unrebutted evidence that it would have declined to certify Ms.

Tripplett regardless of any alleged retaliatory motive.

### 1.    Circumstantial Evidence

To survive summary judgment, Ms. Tripplett must show that "the protected conduct was

a substantial or motivating factor" in DHS's decision. *See Lewis v. School Dist. #70*, 523 F.3d

730, 741-42 (7th Cir. 2008). "A motivating factor does not amount to a but-for factor or to the

-14-

only factor, but is rather a factor that motivated the defendant's actions." *Id.* at 742 (internal quotations omitted). There are "three types of circumstantial evidence of direct discrimination" that Ms. Tripplett may rely on to survive summary judgment. *See Petts v. Rockledge Furniture LLC*, No. 07-1989, — F.3d —, 2008 WL 2791674, *4 (7th Cir. Jul. 21, 2008). First, she may point to "suspicious timing, ambiguous statements oral or written, behavior towards or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Id., quoting Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.2d 853, 862 (7th Cir. 2007); *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006) (a plaintiff who points to "a convincing mosaic of circumstantial evidence" satisfies the direct method); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Second, she may show that "similarly situated employees outside the protected class received systematically better treatment." *Petts v. Rockledge Furniture LLC*, 2008 WL 2791674, at *4. Third, she may rely on "evidence that [she] was qualified for the job in question by passed over in favor of a person outside the protected class and that the employer's stated reason is a pretext for discrimination." *Id.*

Here, Ms. Tripplett relies on the "bits and pieces" method. With this in mind, the court turns to the evidence in this case. Ms. Tripplett must first establish that the people who allegedly retaliated against her knew about her EEOC charges. *See Salas v. Wis. Dept. of Corrections*, 493 F.3d 913, 924 (7th Cir. 2007). Ms. Tripplett concedes that while she was a probationary PAEA, Ms. Baker, Ms. Cole, and Ms. Allen did not know about the two EEOC charges she had filed. Because these DHS employees did not know about the protected activities, they could not have retaliated against Ms. Tripplett based on these activities.

The court will thus focus on Ms. Hughes, who knew about both EEOC charges. Although during Ms. Hughes' deposition, she denied that she was the person responsible for not certifying Ms. Tripplett, other evidence in the record (Carmen Cole's deposition) indicates that Ms. Hughes was the decision-maker, so the court will assume for the purposes of the present summary judgment motion that Ms. Hughes was in fact the decision-maker.

Ms. Tripplett first contends that the timing of events is suspicious, stressing that one month after she filed her second EEOC charge, Ms. Hughes recommended that Ms. Tripplett receive a ten-day suspension and two months later, Ms. Tripplett was denied certification as a PAEA. Normally, a plaintiff may not rely solely upon temporal proximity to establish a causal connection. *See Squibb v. Memorial Med. Ctr.*, 497 F.3d 775, 787 n.9 (7th Cir. 2007) (timing alone is generally insufficient to prove causation). Moreover, the Seventh Circuit has repeatedly held that a one-month gap between protected activity and the allegedly retaliatory act is not enough to show a causal connection. *See Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 904-05 (7th Cir. 2005) (one-month gap not sufficient); *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (same).

So, do other circumstances exist which reasonably suggest that the two events are somehow related to one another? Ms. Tripplett answers this question in the affirmative, arguing that DHS prevented her from successfully completing her probationary period and ultimately refused to certify her as PAEA to retaliate against her. In support, Ms. Tripplett first contends that her training was inadequate because none of her supervisors had ever trained a probationary PAEA, there was no set training protocol, and her training was irregular and sporadic. In contrast, DHS notes that Mr. Mason was primarily responsible for training Ms. Tripplett, he was DHS's regional training coordinator, and he had previously trained PAEAs. The record also

shows that Ms. Tripplett: (1) received additional training on demand; (2) did not follow directions during training, as she repeatedly asked PAEAs whom she was observing for help instead of asking a supervisor; and (3) took eighteen personal days (*i.e.*, over 3½ work weeks) off during her four month training period, and thus was out of the office for approximately one-quarter of her probationary period.

The court finds that Ms. Tripplett's criticisms of her training are not well-taken, as no evidence indicates that Ms. Hughes – the only person who knew about the EEOC charges – controlled Ms. Tripplett's training. Moreover, it is undisputed that DHS allowed Ms. Tripplett to ask for as much training as she wanted and that the people responsible for training her – including Mr. Mason, who was DHS's regional training coordinator and had previously trained PAEAs – were familiar with the responsibilities of the PAEA position and were available to train Ms. Tripplett and answer questions. Moreover, Ms. Tripplett was absent for a significant portion of her probationary period. In short, Ms. Tripplett's criticisms that her training was the root cause of her inability to learn to perform the job requirements of the PAEA position is simply not supported by the record.

Second, Ms. Tripplett claims that she was falsely accused of being discourteous and unprofessional so that she would be suspended and Ms. Hughes could later use the suspension as a reason for not certifying Ms. Tripplett as a PAEA. According to Ms. Tripplett, Ms. Hughes failed to interview the neutral witnesses to the incidents and thus made her decision on an incomplete record. In response, DHS asserts that Ms. Hughes did not interview non-employee witnesses because it is against DHS's policy to contact customers for reasons unrelated to their request for services. Instead, Ms. Hughes relied on the investigation conducted by Ms. Allen (who did not know about Ms. Tripplett's protected activities) and her assessment of credibility.

Given DHS's policy of not drawing customers into employment disputes and the lack of any evidence indicating that this policy was not consistently applied, Ms. Tripplett has failed to identify any evidence that Ms. Hughes' decision to follow the policy was retaliatory.

Third, Ms. Tripplett argues that her five-day suspension was disproportionately severe when compared with that of other employees, particularly Brian Allen. DHS, in response, asserts that Mr. Allen and Ms. Tripplett were not similarly situated because their disciplinary histories were different and Mr. Allen received a written reprimand for neglect of duties, not rude and discourteous behavior. The record, however, shows that Mr. Allen received two reprimands for "being rude, hostile, using profanity" and refusing to follow instructions, as well as behaving unprofessionally and being rude to two customers. Pltf. Statement of Additional Facts at ¶ 30-31.

DHS also stresses that, in any event, Ms. Kirian did not follow Ms. Hughes' recommendation to suspend Ms. Tripplett for ten days and instead gave Ms. Tripplett a five-day suspension. The fact that Ms. Kirian did not follow Ms. Hughes' recommendation does not insulate that recommendation from inquiry: Ms. Hughes recommended a ten-day suspension, both Ms. Tripplett and Mr. Allen had the same job (although Ms. Tripplett was a probationary PAEA) and evidence in the record shows that both Mr. Allen and Ms. Tripplett faced similar struggles when attempting to politely deal with customers.[3] Ms. Hughes's suggestion that Ms.

---

[3] The court acknowledges that Ms. Tripplett has denied that she was rude to customers. DHS disagrees, and this is clearly a disputed issue of fact.

Tripplett be punished more severely than Mr. Allen could thus form part of a mosaic showing that Ms. Hughes was attempting to retaliate against Ms. Tripplett.[4]

Fourth, Ms. Tripplett notes that Ms. Hughes considered the days of work that Ms. Tripplett missed due to a suspension when she decided to recommend that Ms. Tripplett not be certified as a PAEA. Ms. Tripplett characterizes this as suspicious given that the collective bargaining agreement prohibited management from considering suspensions based on conduct predating the probationary period. Ms. Hughes testified that she did not in fact consider the suspension when she decided not to recommend certification. Given that the suspension was listed as a reason for the adverse recommendation, however, it is possible for a reasonable jury to find that Ms. Hughes' later denial rings hollow. This inconsistency could thus also form part of a mosaic supporting Ms. Tripplett's claims.

Fifth, Ms. Tripplett contends that she did not receive a written mid-probationary evaluation as required by the collective bargaining agreement. DHS, on the other hand, contends that the evaluation in February could be considered a mid-probationary evaluation, although it was approximately one month late, and Ms. Tripplett received frequent oral feedback from her supervisors. Again, the failure to comply strictly with the collective bargaining agreement's requirements could be viewed as inadvertent (DHS's position) or suspicious (Ms. Tripplett's position). *See Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976, 980 (7th Cir. 2000) (violation of an employer's policies can support an inference that the employer's proffered reasons for an employment action are pretextual).

---

[4] It is true that Ms. Hughes never made any comments indicating that she wanted to retaliate against Ms. Tripplett. However, under the direct method, Ms. Tripplett may nevertheless point to circumstantial evidence that adds up to enough evidence to withstand a motion for summary judgment. *See Petts v. Rockledge Furniture LLC*, 2008 WL 2791674, at *4.

Finally, Ms. Tripplett argues that her probation period was cut short because it ended on February 25, 2005, instead of March 1, 2005, and Ms. Cole completed her recommendation to Ms. Hughes on or about February 2, 2005. February 25, 2005, was a Friday, so this date was only one business day shy of the requisite four month probationary period. Ms. Cole clearly did not rely on the entire probationary period in compiling her recommendation, as she drafted her recommendation on February 2, 2005. Ms. Cole, however, did not know about Ms. Tripplett's protected activity, so her early recommendation is not evidence of retaliation.

This leaves Ms. Hughes, who made her decision on February 25, 2005, one business day before the official end of the probationary period, and based this decision on, among other things, evaluations that substantially predated the end of the probationary period. It would be possible for a jury to find that Ms. Hughes (who knew about Ms. Tripplett's protected activity) chose to use incomplete information when deciding whether to certify Ms. Tripplett in order to weigh the scales against certification to punish her for filing an EEOC charge. This is by no means the only conceivable inference, but it is a possible inference given that DHS did not make its decision based on four full months of work as a probationary employee per its policies. *See id.*

DHS argues that the decision not to certify Ms. Tripplett was proper because Ms. Tripplett was incapable of performing the duties of a PAEA and was repeatedly disciplined for being discourteous and unprofessional. In essence, this boils down to a contention that Ms. Tripplett failed to meet its legitimate expectations because she was incompetent and had a challenging personality. Ms. Tripplett, however, has denied that she was discourteous or unprofessional and pointed to evidence showing that Brian Allen, another PAEA, was rude to customers but kept his job.

-20-

With respect to Ms. Tripplett's inability to learn to perform satisfactorily as a PAEA, Ms. Tripplett missed three weeks of her probationary period due to suspensions, the timing of which were beyond her control. After missing such a significant training period, Ms. Tripplett then chose to take even more time off for personal days. Ms. Hughes knew that Ms. Tripplett had missed many weeks of her probationary period and still considered Ms. Cole's recommendation, which was submitted with almost a month left on the four-month probationary period. Ms. Hughes thus did not make her decision based on the full four-month probationary period. Ms. Hughes also listed Ms. Tripplett's suspension as a reason for not certifying her, but later denied that she took the suspension into account when making her decision. In addition, the record could be viewed as showing that Ms. Hughes recommended that Ms. Tripplett be punished more severely than Mr. Allen when it appears that Mr. Allen had a more serious list of prior transgressions.

Thus, it is undisputed that at the three-month mark, Ms. Tripplett lacked the computer skills to fill the PAEA position, and no evidence shows that in her last month as a probationary PAEA, she learned to operate the automated intake system successfully. On the other hand, the parties dispute whether Ms. Tripplett was rude to customers and her fellow DHS employees. Moreover, Ms. Hughes was aware of Ms. Tripplett's protected activity, chose to use incomplete information when deciding whether to certify Ms. Tripplett, listed a reason (the suspension) for her decision that she later retracted, and recommended discipline that could be viewed as unusually harsh when compared to another PAEA who had performance issues similar to Ms. Tripplett's.

All of this evidence, when viewed in the light most favorable to Ms. Tripplett, could suggest that there is a triable question regarding a causal link between Ms. Tripplett's EEOC

-21-

complaints and Ms. Hughes' actions which resulted in the decision not to certify Ms. Tripplett as a PAEA. As noted above, however, this is not enough to entitle Ms. Tripplett to a trial under the direct method. Thus, the court considers whether, regardless of the alleged retaliation, Ms. Tripplett would have received the same unfavorable decision with respect to promotion to the PAEA position based on her inability to use the automated intake system, regardless of any alleged discrimination.

### 2. Would DHS Have Declined to Certify Ms. Tripplett Regardless of Ms. Hughes' Alleged Retaliatory Conduct?

According to the Seventh Circuit, a defendant is entitled to summary judgment if it points to unrebutted evidence showing that it would have taken the same adverse employment action against the plaintiff even if it had no alleged retaliatory motive. *Ridings v. Riverside Medical Center*, 2008 WL 3271916, at *13. For example, in *Ridings*, the plaintiff argued that her employer retaliated against her by terminating her after she began to work a reduced schedule pursuant to the FMLA due to a thyroid condition. The plaintiff presented her case using the direct method, and pointed to a number of pieces of circumstantial evidence to attempt to create a question as to her employer's motives in objecting to her reduced schedule. *Id.*

The employer acknowledged that it did not terminate the plaintiff due to poor work quality, but asserted that it was allowed to ask the plaintiff to work a full schedule unless and until she filled out the proper FMLA paperwork. *Id.* The district court granted summary judgment in favor of the employer and the Seventh Circuit affirmed, holding that regardless of the employer's motives, it "was entitled to ask [the plaintiff] to work a full schedule on the premises because she was a full-time employee; and employee cannot simply inform the employer when and from where she would like to work." *Id.* The court also found that the

-22-

employer could not be deemed to retaliate against one of its employees by merely asking her to fulfill her obligations under the FMLA prior to allowing her to work reduced hours. *Id.* at 14.

In this case, Ms. Tripplett contends that DHS's decision not to certify her flowed from DHS's desire to retaliate against her after she filed two EEOC charges. On the other hand, DHS argues that it did not certify Ms. Tripplett because she lacked the computer skills to perform an essential function of the position of PAEA. It is undisputed that during the entire span of her four-month probationary period, Ms. Tripplett was unable to learn how to use the automated intake system used by PAEAs to process claims.

Ms. Tripplett asserts that her inability to perform the main job function of a PAEA is DHS's fault. The court, however, has already rejected Ms. Tripplett's contentions about her allegedly inadequate training. In sum, Ms. Tripplett received initial training followed by unlimited training on demand. Moreover, no evidence suggests that Ms. Hughes – the only person who knew about the EEOC charges – controlled Ms. Tripplett's training. In addition, Ms. Tripplett chose to take a significant number of personal days off during her probationary period. Thus, even if the court accepts Ms. Tripplett's view of the circumstantial evidence, she still is not entitled to summary judgment because the record simply does not support Ms. Tripplett's attempt to blame DHS for her inability to learn how to use the system appropriately and absolutely no evidence shows that DHS would have certified a person who could not use the automated intake system. *See id.*

Because Ms. Tripplett was unable to learn how to operate the automated intake system, this case is very similar to *Ridings*. Both the plaintiff in *Ridings* and Ms. Tripplett claimed that their employers took an adverse employment action due to a desire to retaliate. Moreover, both the employer in *Ridings* as well as the employer in the instant case – DHS – relied on an

-23-

independent reason as the basis for their decision to take the adverse employment action. Specifically, in *Ridings*, the employer asserted that it was entitled to require all of its full-time employees to work a full schedule based in the workplace unless an employee was covered by the FMLA and submitted the required paperwork. In this case, DHS asserted that it was entitled to certify probationary PAEAs only if they could successfully operate the computer system used to process applications for benefits.

In *Ridings*, the Seventh Circuit held that the employer was entitled to summary judgment because the plaintiff – who was meeting her employer's legitimate performance expectations – was not entitled to dictate her own work schedule and thus could not have been harmed by any alleged desire to retaliate against her. *See id.* at *13-14. The rationale in *Ridings* is squarely on point in the instant case: Ms. Tripplett was not entitled to redline the main responsibility of a PAEA (conducting intake interviews using the automated intake system) out of the PAEA job description. Her inability to use that system thus means, as in *Ridings*, that she could not have been harmed by any alleged desire to retaliate against her when DHS declined not to certify her as a PAEA because regardless of whether she filed EEOC charges or not, she would not have been certified as a PAEA.

Accordingly, the court acknowledges that Ms. Tripplett believes that DHS treated her unfairly and retaliated against her after she filed two EEOC complaints. Nevertheless, even if the court accepts Ms. Tripplett's view of the record, she still cannot prevail because it is undisputed that she could not perform an essential function of the PAEA position since she was unable to learn how to use the intake system during her probationary period, and Ms. Tripplett has failed to point to any evidence showing that DHS provided inadequate training. Thus, DHS's motion for summary judgment is granted.

-24-

## III. Conclusion

For the above reasons, DHS's motion for summary judgment [docket no. 119] is granted. The court thanks Ms. Tripplett's appointed counsel (Amy McCracken, Howard Mocerf, and Richard Darke of Duane Morris LLC) for their zealous advocacy on behalf of Ms. Tripplett. The court also commends counsel for their unusually thorough, well-researched, and well-written briefs and their comprehensive Rule 56 submissions. The clerk is further directed to strike docket no. 41 (an appearance on behalf of D.C. Dental Supplies) and to terminate D.C. Dental Supplies as a party in this action, as counsel's appearance apparently was mistakenly docketed in this case. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

DATE: August 19, 2008

Blanche M. Manning

Blanche M. Manning
United States District Judge

-25-